IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                      CIVIL ACTION NO. 5:07-cv-00635

AMOR RAMIREZ and
ROLANDO C. RAMIREZ,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the United States' Motion for Summary Judgment [Docket 15]. This matter is before the Court on the United States' Complaint for Internal Revenue Taxes [Docket 1], wherein the Government seeks to recover unpaid taxes from Defendant Amor Ramirez (Dr. Ramirez) by foreclosing on a parcel or real property in Fayette County, West Virginia, owned jointly by Dr. Ramirez and her husband, Rolando C. Ramirez (Mr. Ramirez). Discovery has closed, and the Government filed its motion for summary judgment on January 30, 2009. That motion has been fully briefed and the matter is now ripe for the Court's consideration.

The United States brought this action pursuant to 26 U.S.C. § 7401. Therefore, jurisdiction in this Court is proper under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402. "All persons having liens upon or claiming any interest in" the subject property have been joined as parties pursuant to 26 U.S.C. § 7403(b).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The material facts are not in dispute. To date, the United States has assessed income tax deficiencies, interest, and penalties for tax years 1994, 1995, 1998, 2000, 2002, and 2003. Specifically, on October 13, 1997, the United States assessed tax deficiencies, interest, and penalties for 1994 and 1995. On December 5, 2005, the United States assessed an additional penalty for both 1994 and 1995. Although payments and credits have been applied to the assessments for 1994, the unpaid balance as of July 24, 2006, was $22,507.66[1] for 1994 and $24,100.16 for 1995. On October 23, 2000, the United States assessed tax deficiencies, interest, and penalties for 1998, and on December 5, 2005, the United States assessed an additional penalty for that year. Although payments and credits have been applied to the assessment, the outstanding balance for 1998, as of July 24, 2006, was $14,076.45. On June 4, 2001, the United States assessed tax deficiencies, interest, and penalties for 2000, and on December 5, 2005, the United States assessed an additional penalty for that year. Although payments and credits have been applied to the assessment, the outstanding balance for 2000, as of July 24, 2006, was $24,072.10. On June 23, 2003, the United States assessed tax deficiencies, interest, and penalties for 2002, and on December 5, 2005, the United States assessed an additional penalty for that year. Although payments and credits have been applied to the assessment, the outstanding balance for 2002, as of July 24, 2006, was $45,348.82. Finally, on November 8, 2004, the United States assessed tax deficiencies, interest, and penalties for 2003, and on December 5, 2005, the United States assessed an additional penalty for that year.

---

[1] In both the complaint and the memorandum of law filed in support of Plaintiff's motion for summary judgment, Plaintiff states that the outstanding balance for 1994 as of July 24, 2006, was $25,507.66. However, a review of the records filed in support of the motion for summary judgment reveals that the correct number is $22,507.66. (Docket 15-2 at 9.)

Although $2,800.14 of the tax and penalties was abated on April 25, 2005, the outstanding balance for 2003, as of July 24, 2006, was $26,962.51.  In summary, after all assessments were made for tax deficiencies, interest, and penalties—including an additional penalty assessed on December 5, 2005—and all payments, credits, and abatements have been applied, Dr. Ramirez's outstanding balance as of July 24, 2006, was $157,067.70.  Since that date, interest and penalties have continued to accrue.

To recover these funds, the Government seeks to foreclose on a parcel of real property owned jointly by Dr. and Mr. Ramirez located at Adena Village, Valley District, Fayette County, West Virginia (the Adena Village property), more particularly described as follows:

> Lot No. 63, Section 2, as shown and designated on that certain map entitled "Adena Village  Section Two  Adena Development Corporation Valley District, Fayette County, W.Va.," prepared by S.E. Thornton, P.E., dated July 1975, of record in the Office of the Clerk of the County Commission of Fayette County, West Virginia, in Map Book 15, at Page 53.

(Docket 1 ¶ 44.)  The United States filed a notice of federal tax lien against Dr. Ramirez in Fayette County, West Virginia, on August 28, 2000, for the 1994 and 1995 assessments; on January 2, 2001, for the 1998 assessment; and on July 16, 2001, for the 2000 assessment.  The Government now seeks a declaration from this Court that the tax assessments are valid and subsisting liens against Dr. Ramirez's property, including the Adena Village property, and an order that the liens be foreclosed, the property sold, and that the proceeds of the sale be distributed toward the satisfaction of the liens.

## II.  APPLICABLE LAW

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Catrett*, 477 U.S. at 323. Even undisputed facts may give rise to multiple inferences; however, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

"The [Tax] Commissioner's determination of tax liability is presumptively correct." *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980) (citing *Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971)). To establish a prima facie case of tax liability, the United States must only

"introduce[] into evidence the certified copies of the certificates of assessment." *Pomponio*, 635 F.2d at 296 (citing *Psaty*, 442 F.2d at 1154). Once the United States establishes a prima facie case, the burden shifts to Defendants to prove that the Tax Commissioner's determination was erroneous, that Defendants were not "responsible persons" under the Tax Code, or that the failure to pay the tax was not willful. *Pomponio*, 635 F.2d at 296.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. "Th[is] statutory language . . . is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719 (1985). When spouses hold property as tenants by the entirety, a tax lien may attach to one spouse's interest in the property, even where the other spouse's interest is unencumbered. *United States v. Craft*, 535 U.S. 274, 288 (2002).

It is undisputed that the statutory language of 26 U.S.C. § 7403 allows a district court to order the sale of property that is jointly owned by a tax debtor and his or her spouse.[2] *United States v. Rodgers*, 461 U.S. 677, 705 (1983). The Supreme Court in *Rodgers* outlined four factors for a

---

[2] The relevant language provides:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

5

court to consider in determining whether to exercise its discretion to order the sale of such jointly owned property, "keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711. Specifically, a court should consider: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes," (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events . . . , have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors," (3) "the likely prejudice to the third party, both in personal dislocation costs and in [practical undercompensation]," and (4) "the relative character and value of the non-liable and liable interests held in the property." *Id.* at 710–11.

## *III. ANALYSIS*

In their response to the summary judgment motion, Defendants do not dispute that the United States has valid and subsisting tax liens on the Adena Village property. Rather, their sole contention is that any sale of the property would prejudice the interests of Mr. Ramirez, an innocent third party and the spouse of Dr. Ramirez. In support of this contention, Defendants cite to *Rodgers*, and rely almost exclusively on the third factor—prejudice to a third party in dislocation costs and undercompensation. Specifically, Defendants state that "Mr. Ramirez has lived in his home for 32 years," and that "[f]orcing him to find a new home, pack all his belongings, and relocate would result in great personal cost." (Docket 17 at 4.) Defendants further argue that no prejudice to the United States would result because it would maintain its partial interest in the property and it "would still have a judgment to protect [that] interest." (*Id.* at 5.)

In its reply memorandum, the Government notes that Defendants' argument is rested solely on the affidavit of Mr. Ramirez, wherein he states, "I would incur significant personal expense if I was forced to try to find a new home and move all of my belongings." (Docket 17-2 at 2 ¶ 9.) Further, the Government contends that the remaining *Rodgers* factors weigh in favor of ordering a sale. Specifically, it contends that the United States would be prejudiced because it would be difficult, if not impossible, to sell Dr. Ramirez's interest by itself because that interest would be subject to Mr. Ramirez's continued rights to the property. Further, the Government asserts that Mr. Ramirez has no legally recognized expectation that the property would not be subject to forced sale, because the Supreme Court has consistently held that property held in the entirety is subject to forced sale. Finally, the Government submits that the relative character and value of Dr. and Mr. Ramirez's interests is the same.

Upon examination of the *Rodgers* factors, it is clear that the Adena Village property should be sold. The first factor—prejudice to the United States if only Dr. Ramirez's partial interest was sold—weighs heavily in favor of the Government. As the Supreme Court recognized in *Rodgers*, the "practical consequences" of ordering a sale of one spouse's interest in real property may counsel against such a sale. *Rodgers*, 461 U.S. 698–99. Those consequences include the reduction in market value of such a partial interest based on the lack of desirability for such an interest on the market, *i.e.*, there is less demand for an interest in real property when that interest is subject to a surviving spouse's interest.[3] *Id.* at 710.

---

[3] Although there is no evidence in the record to suggest how much diminution in value would occur if the interests were to be sold separately, it is obvious to the Court that such an interest would bring less on the market and therefore prejudice the United States' ability to recover the full amount of unpaid taxes.

As to the second factor—a legally recognized expectation that the property would not be subject to a forced sale—Defendants have presented no evidence that would sway this factor in their favor. As the Government points out, it is well-established that courts may order such a sale. Moreover, in West Virginia, a non-debtor spouse's only expectation is that a court hold a hearing before ordering a partition by sale to determine whether the spouse's rights would be prejudiced by a sale.[4] *Vinvent v. Gustke*, 336 S.E.2d 33, 35–36 (W. Va. 1985). That determination, however, is part of the Court's analysis here. Thus, this factor too weighs in favor of an ordered sale.

With respect to the fourth factor—the relative character and value of the interests—there is no evidence that either interest is more valuable than the other.[5] Rather, because both parties' interests are presumably the same, the fourth factor does not weigh for or against an ordered sale.

Finally, although any prejudice to Mr. Ramirez that would result from having to relocate and possibly being undercompensated for his interest in the Adena Village property is a concern, the concern is outweighed by the United States' "paramount interest in prompt and certain collection of delinquent taxes." *Rodgers*, 461 U.S. at 711. In other words, Dr. Ramirez should not get away with not paying her taxes, notwithstanding the possibility of prejudice to Mr. Ramirez. Further,

---

[4] This expectation arose in the context of a judgment creditor's desire to sell an interest obtained via a lien on a debtor's family residence. 336 S.E.2d at 34. However, the debtor owned the residence jointly with his wife as joint tenants with a right of survivorship. *Id.* The West Virginia Supreme Court of Appeals held that the creditor could either sell the joint interest as a tenant in common with debtor's wife to a purchaser who would be "willing to take the residence subject to [the wife's] right to live there with her husband and children," *id.* at 35, or seek to force a partition by sale of the property, in which case the trial court must hold a hearing to determine whether the wife would be prejudiced. *Id.* at 36.

[5] In fact, neither party has presented *any* evidence regarding the precise nature or value of the Mr. and Dr. Ramirez's interests.

under West Virginia law, Dr. Ramirez's money is Mr. Ramirez's money. *See* W. Va. Code § 48-1-233 (defining "marital property"). At the very least, Mr. Ramirez could have benefitted financially, albeit unknowingly, from money coming into the family instead of being paid to the government. Such a benefit, especially in this case where the delinquency continued for a period of nearly ten years and resulted in almost $160,000 in unpaid taxes, is not negligible. Accordingly, although this factor weighs slightly in favor of Defendants, consideration of the *Rodgers* factors on the whole favors the Government. Put simply, Defendants' options are to pay the taxes, or lose their house.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **GRANTED**. Plaintiff is **DIRECTED** to file with the Court, withing fifteen days of entry of this Order, a declaration showing the current amounts owed by Defendant Amor Ramirez, inclusive of accrued interest, payments, and penalties. Upon receipt of that declaration, the Court will enter a Judgment Order and Order of Sale setting forth the amount of judgment and the conditions of the sale.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 8, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE